James X. Bormes (*pro hac vice* admission pending)
LAW OFFICE OF JAMES X. BORMES, P.C.
Illinois State Bar No. 620268
8 South Michigan Avenue
Suite 2600
Chicago, Illinois  60603
(312) 201-0575
jxbormes@bormeslaw.com

**LEAD ATTORNEY IN CHARGE FOR PLAINTIFF AND CLASS MEMBERS**

Thomas M. Ryan (*pro hac vice* admission pending)
LAW OFFICE OF THOMAS M. RYAN, P.C.
Illinois State Bar No. 6273422
35 East Wacker Drive
Suite 650
Chicago, Illinois  60601
(312) 726-3400
Tom@tomryanlaw.com
Attorney for Plaintiff

LOCAL COUNSEL:
Michelle R. Matheson #019568
MATHESON & MATHESON, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, Arizona 85260
(480) 889-8951
mmatheson@mathesonlegal.com
Attorney for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID COLON, individually and on behalf of all others similarly situated,<br><br>  Plaintiff,<br><br>  v.<br><br>QBE AMERICAS, INC. and AEROTEK, INC.,<br><br>  Defendants. | No.: 2:16-cv-01900-ROS<br><br>**AMENDED COLLECTIVE ACTION COMPLAINT**<br><br>**(JURY TRIAL REQUESTED)** |

Plaintiff, David Colon, individually and on behalf of all other persons similarly situated, known and unknown, through his attorneys, complains against Defendants QBE Americas, Inc. ("QBE") and Aerotek, Inc. ("Aerotek") (collectively, "Defendants"), as follows:

**NATURE OF PLAINTIFF'S CLAIMS**

1. This lawsuit arises under the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA"), for Defendants' failure to pay Plaintiff and other similarly situated persons all overtime pay for all time worked in excess of forty (40) hours per week.

2. Defendants employ the telephone-based workers who are the putative class members in this lawsuit.

3. Defendants knowingly required and/or permitted Plaintiff, who worked as a telephone-dedicated employee in the position of Insurance Customer Service Representative and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, reading company issued emails and instructions, and completing customer service calls.

4. In addition, Defendants were aware that Plaintiff and those similarly situated to him also performed work for Defendants on their break periods, including meal breaks, for which they were not paid. The work that Plaintiff and similarly situated employees performed during break periods includes, but is not limited to, completing customer orders, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

5. The amount of uncompensated time Plaintiff and those similarly situated to him spend or have spent on these required and unpaid work activities averages approximately fifteen to twenty minutes per day per person.

6. Defendants' conduct violates the FLSA, which requires non-exempt employees to be compensated for their overtime work at a rate of one and one-half times their regular rate of pay. *See* 29 U.S.C. § 207(a).

7. Plaintiff brings his FLSA overtime claims as a collective action pursuant to 29 U.S.C. § 216(b) on behalf of telephone-dedicated employees who worked for Defendants throughout the United States at call centers owned by QBE.

## JURISDICTION AND VENUE

8. This Court has original jurisdiction over Plaintiff's FLSA claims in this action under 29 U.S.C. § 1331 and 29 U.S.C. § 216(b).

9. Venue is proper in this Court as the illegal conduct alleged herein occurred in this district.

## THE PARTIES

10. Plaintiff David Colon is an individual who Defendants employed from approximately January 2014 to approximately September 2014 as an hourly, non-exempt Insurance Customer Service Representative who was placed to work in a call center operated by QBE located at 2700 West Frye Road in Chandler, Arizona. Plaintiff Colon resides in and is domiciled within this judicial district.

11. Defendant QBE Americas, Inc. is a division of QBE Insurance Group Limited, one of the world's 20 largest insurance and reinsurance companies. QBE is considered a leading underwriter within its chosen markets. During the last three years, QBE has operated telephone call centers in several states such as Arizona, California, Nebraska, Texas, Pennsylvania and North Carolina where telephone-dedicated hourly employees handle phone calls regarding insurance coverage, billing, and policy related questions. QBE directly employs some Insurance Customer Service Representatives at its call centers.

12. Defendant Aerotek, Inc. is a for profit Maryland corporation qualified to do business in Arizona. Defendant may be served at 2338 West Royal Palm Road, Suite J, Phoenix, Arizona 85021, care of Corporation Service Company, Defendant's registered agent in Arizona.

13. Aerotek works with companies, including QBE, that require large volume work forces. Aerotek has employees and managers who work onsite at these companies, including at QBE's work sites where Plaintiff and the putative class members worked. Aerotek employees and managers assist and help manage a company's telephone-dedicated staffing needs and who manage recruitment, selection, training, planning, retention and management reporting of those phone-based employees.

14. During the class period, Aerotek provided QBE with staffing and in-house services related to the human resources processes, from worker recruitment and selection to introduction, planning and management of workers, including of the Plaintiff and similarly situated employees.

15. Aerotek issued paychecks to Plaintiff and the similarly situated employees, until Plaintiff and others were directly hired by QBE, if applicable, at which time QBE issued paychecks to Plaintiff and such employees.

16. Defendants employed Plaintiff and other similarly situated persons as "employees," as that term is defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

17. At all material times, each Defendant has been an enterprise in commerce or in the production of goods for commerce within the meaning of 3(s)(1) of the FLSA because it has had employees engaged in commerce. 29 U.S.C. § 203(s)(1).

18. Furthermore, each Defendant has had, and continues to have, an annual gross business volume in excess of $500,000.

19. At all relevant times, each Defendant was an "employer" of Plaintiff and other similarly situated persons, as that term is defined by Section 203(d) of the FLSA, 29 U.S.C. § 203(d).

20. At all material times, Plaintiff and FLSA Class Members were individual

employees who engaged in commerce or in the production of goods for commerce as required by 29 USC § 206-207.

21.   Further, at all material times, each Defendant has operated as a "single enterprise" within the meaning of 3(r)(1) of the FLSA. 29 U.S.C. § 203(r)(1). That is, each Defendant performs related activities through unified operation and common control for a common business purpose. *See Brennan v. Arnheim and Neely, Inc.*, 410 U.S. 512, 515 (1973); *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 914–15 (9th Cir. 2003).

## FACTUAL ALLEGATIONS

### A.   *Defendants' Practice of Requiring and/or Permitting Telephone-Based Hourly Employees to Work Before the Start of Their Scheduled Shift Time*

22.   QBE operates and has operated "call centers" in Arizona and across the nation where telephone-dedicated employees similar to Plaintiff handle phone calls regarding insurance coverage, billing, and policy related questions offered by QBE to its customers.

23.   In particular, Plaintiff and other similarly situated telephone-based employees perform the following tasks: answering inbound calls, researching inquiries and responding to coverage, billing and policy related questions to meet service level agreements, advising customers by recommending and/or cross-selling available coverages and products, and resolving customer issues.

24.   QBE and Aertoek have an agreement to share the services of Plaintiff and similarly situated telephone-based employees.

25.   QBE and Aerotek earn revenue and profits from the services of Plaintiff and other similarly situated telephone-dedicated employees.

26.   Prior to starting work on the call center floor, Plaintiff and other similarly situated telephone-based employees were and are interviewed by employees and managers of QBE and

Aerotek.

27. QBE and Aerotek had the power to hire and fire Plaintiff and other persons similarly situated.

28. At the QBE call center where Plaintiff Colon worked and at QBE's other call centers, QBE had managers on the floor of the call center during the workday, managing the work activities of the Plaintiff and other similarly situated persons.

29. Defendants do not allow telephone-based employees to use QBE's phones and computers for any personal use. Additionally, Defendants generally prohibit and do not allow telephone-based employees to use their own personal cell phones on the call center floor. Under Defendants' policies and practices, telephone-based employees are required to store their personal cell phones during the work day and can generally only use them on breaks and off the call center floor.

30. At the QBE call center where Plaintiff worked and at QBE's other call centers, QBE's managers on the call center floor could and did regularly see with their own eyes that Plaintiff and similarly situated telephone-based employees arrived at their work stations before the start of their scheduled shift time, logged into QBE's computers, and began working on their computers prior to the start of their scheduled shift time.

31. Despite seeing and knowing that Plaintiff and similarly situated telephone-based employees performed work at their work stations prior to their scheduled shift time start, Defendants and their managers on the floor of the call centers did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

32. Defendants possess, control and/or have access to information and electronic data that shows the times Plaintiff and similarly situated telephone-based employees logged into their

computers each day and the time they logged into their telephone systems.

33.     By possessing, controlling and/or accessing this information, Defendants knew that Plaintiff and similarly situated telephone-based employees worked prior to the start of their scheduled shift time.

34.     Despite having this information and knowing that Plaintiff and similarly situated telephone-based employees logged into their computers, initialized necessary software programs, and read company issued emails and instructions prior to the start of their scheduled shift time, Defendants did not make any effort to stop or otherwise disallow this pre-shift work and instead allowed and permitted it to happen.

35.     Defendants knowingly required and/or permitted Plaintiff and those similarly situated to him to perform unpaid work before and after the start and end times of their shifts, including but not limited to booting up computers, initializing several software programs, and reading company issued emails and instructions prior to the start of their scheduled shift time, and completing customer service calls, closing down the software programs, and logging off the system after the end of their scheduled shift times.

36.     In addition, by having managers on the call center floor and having access to the electronic data, among other things, Defendants were aware that Plaintiff and those similarly situated to him also performed work for Defendants on their break periods, for which they were not paid.  The work that Plaintiff and similarly situated employees performed during break periods includes, but is not limited to, completing customer orders, finishing customer service calls, logging back into the phone system, re-booting their computers and initializing software programs.

37.     The amount of uncompensated time Plaintiff and those similarly situated to him spend or have spent on these required and unpaid work activities averages approximately fifteen

to twenty minutes per day per person.

38.   Defendants monitored and directed the work activities of Plaintiff and other similarly situated persons, including the unpaid work at issue.

**B.   *Defendants Knew of and Assented to the Pre-Shift Work***

39.   Defendants' policy and practice permits and/or requires telephone-based employees to be logged into their phones and to be ready to handle a call with a customer by the employee's scheduled start time.

40.   In order to be logged into QBE's telephone systems and be ready to handle a call with a customer at the start of their scheduled shift time, Defendants required and/or permitted Plaintiff and similarly situated telephone-based employees to arrive at their work station prior to their scheduled shift time and boot up computers, initialize several software programs, and read company emails and instructions.

41.   Defendants' policy and practice disciplines telephone-based employees if they are not logged into their phones and ready to handle calls by the start of their scheduled shift time.

42.   This policy and practice of Defendants results in telephone-based employees, including the Plaintiff, to boot up their computers, initialize several software programs and/or read company emails and instructions prior to their start of their scheduled shift time.

43.   As set forth herein, via their policies and practices and through their own telephone and computer systems, Defendants knew and were aware that the telephone-based employees performed work prior to the start of their scheduled shift.

44.   Defendants did not instruct Plaintiff and similarly situated telephone-based employees to not log into their computers or telephone, or to not read company emails prior to the start of their scheduled shift time.  Rather, Defendants required, permitted and/or allowed Plaintiff

and the putative class members to work prior to their scheduled shift time.

45. By knowing of, permitting and/or requiring Plaintiff and similarly situated telephone-based employees to log into their computers, initialize their various software programs and/or read company email and instructions prior to the start of their scheduled shift time, Defendants assented to them performing this work.

C. *QBE's 15 Minute Rounding Policy and Practice*

46. Since at least 2011, QBE has utilized a 15 minute rounding policy and practice.

47. Under QBE's 15 minute rounding policy and practice, if an employee had a scheduled start time of 8:00 a.m. and logged into QBE's computer systems and network and began working prior to 8:00 a.m., QBE's 15 minute rounding policy and practice would round away the time from 7:53 a.m. to 8:00 a.m.

48. After QBE's rounding policy and practice rounded the time from 7:53 a.m. to 8:00 a.m., the employee would not be paid for the seven minutes rounded away even though he or she worked during that time.

49. Since at least 2011, QBE's 15 minute rounding policy and practice applied to all telephone-dedicated workers directly employed by QBE and to all those who were placed at QBE's call centers via staffing agencies like Aerotek.

50. Since at least 2011, QBE's 15 minute rounding policy and practice applied to all telephone-dedicated workers at QBE's call centers in Arizona, California, Nebraska, Texas, Pennsylvania and North Carolina.

51. Since at least 2011, QBE has not undertaken any formal or informal audit or investigation of its rounding practices in order to determine if its 15 minute rounding policy and practice is fair and equitable under the FLSA and Code of Federal Regulations.

D. *Defendants' Failure to Pay Overtime Wages to Their Telephone-Based Hourly Employees*

52. Defendants determined the rate of pay for Plaintiff other similarly situated persons.

53. Plaintiff's rate of pay while working for Defendants was $18.75 per hour.

54. During nearly every workweek from approximately January 2014 to approximately September 2014, Plaintiff generally was scheduled to and did work 8 hours or more, 5 days per week.

55. Plaintiff typically worked an average of ten to fifteen minutes prior to his scheduled shift start time without pay each day.

56. Plaintiff also typically worked an average of five to ten minutes after his scheduled shift time and during his breaks without pay each day.

57. Because Plaintiff typically worked at least forty hours during each workweek that he was employed by Defendants, all of the time that he was required or permitted to work without pay constitutes unpaid overtime wages.

58. Plaintiff is owed at least 1.25 hours of unpaid overtime wages for each week that he worked for Defendants.

59. Defendants' managers reviewed and approved the time records of Plaintiff and other similarly situated persons prior to them receiving their paychecks.

60. Defendants supervised and controlled the work schedule of Plaintiff and other similarly situated persons.

61. Plaintiff and other similarly situated persons were directed by Defendants' managers to record only their scheduled time worked on their timesheets, rather than their actual time worked. Plaintiff and other similarly situated persons who were placed to work at QBE through staffing agencies such as Aerotek submitted their timesheets to Defendants' managers through a program called Fieldglass for review and prior to receiving their paychecks. QBE's direct employees used programs known as Etime and Workday to record their time worked. All

employees' timesheets were reviewed and approved by employees of Defendants.

62. Defendants issued paychecks to Plaintiff other similarly situated persons, and were involved in determining the actual amount of compensation paid by the paycheck.

63. Plaintiff and those employees similarly situated are individuals who were, or are, employed by Defendants in customer service, sales, and similar positions at QBE's call centers who were not paid for some or all of their work activities prior to the beginning of their shifts, during meal and rest breaks, or after the end of their shifts.

64. Plaintiff and the other employees are similarly situated to one another because their duties consisted primarily of providing services related to handling phone calls regarding insurance coverage, billing, and policy related questions offered by QBE to its customers while working in QBE's call centers. Plaintiff and others similarly situated all shared similar policies, job titles, job descriptions, training, job duties and compensation, among other things.

65. Plaintiff and the other employees are also similar because Defendants did not pay them for all time they actually worked. Defendants knowingly required Plaintiff and the similarly situated individuals to perform unpaid work before and after their scheduled shifts, including but not limited to booting-up computers, initializing several software programs, reading company emails and instructions, and completing customer service calls. Additionally, Defendants were aware that Plaintiff and those similarly situated to him also performed work for Defendants on their break periods, for which they were not paid.

66. The net effect of Defendants' policies and practices, instituted and approved by company managers, is that Defendants willfully failed to pay regular and overtime compensation to Plaintiff and others similarly situated, and willfully failed to keep accurate time records to save payroll costs. Defendants thus enjoyed ill-gained profits at the expense of their hourly employees.

67. Plaintiff and others similarly situated typically work or worked in excess of forty hours per week for Defendants in a given workweek.

68. Defendants' policy and practice of requiring and/or permitting their employees, including Plaintiff and other non-exempt, hourly employees, to perform work without pay for such work performed, violates Section 6 of the FLSA, 29 U.S.C. § 206.

69. Defendants' policy and practice of requiring their employees to perform work without pay in many instances has caused and continues to cause Plaintiff and certain other similarly situated hourly employees to work in excess of forty hours per week, without being properly compensated at a wage of 1.5 times their respective hourly rate for such work performed, as required by Section 7 of the FLSA, 29 U.S.C. § 207.

70. Defendants' failure to compensate their non-exempt, hourly call center employees with the full amount of the applicable regular wage or overtime wage has caused Plaintiff and other similarly situated non-exempt call center employees to suffer harm.

71. Defendants' non-exempt, call center hourly employees are entitled to compensation for all time they worked without pay in any given workweek.

**COLLECTIVE ACTION ALLEGATIONS**

72. Plaintiff brings Count I of this Complaint as a collective action on behalf of himself and all other current and former hourly employees of Defendants who Defendants required to perform the work described herein without pay at any time during the three years prior to the commencement of the action to present at call centers owned by QBE in Arizona, California, Nebraska, Texas, Pennsylvania and North Carolina.

73. Plaintiff has actual knowledge that FLSA Class Members have also been denied overtime pay for hours worked over forty hours per workweek.  That is, Plaintiff worked with

12

other telephone dedicated employees who worked at the QBE call center. As such, he has first-hand personal knowledge that the same pay violations occurred to other class members. Furthermore, other telephone dedicated employees at QBE call centers have shared with him similar pay violation experiences as those described in this complaint.

74. Other employees similarly situated to Plaintiff work or have worked at QBE call centers, but were not paid overtime at the rate of one and one-half their regular rate when those hours exceeded forty hours per workweek.

75. Although Defendants permitted and/or required the FLSA Class Members to work in excess of forty hours per workweek, Defendants have denied them full compensation for their hours worked over forty. Defendants have also denied them full compensation at the federally mandated minimum wage rate.

76. FLSA Class Members perform or have performed the same or similar work as Plaintiff.

77. FLSA Class Members regularly work or have worked in excess of forty hours during a workweek.

78. FLSA Class Members are not exempt from receiving overtime pay at the federally mandated wage rate under the FLSA.

79. As such, FLSA Class Members are similar to Plaintiff in terms of job duties, pay structure, and the denial of overtime wages.

80. Defendants' failure to pay overtime compensation wage rate required by the FLSA results from generally applicable policies or practices, and does not depend on the personal circumstances of the FLSA Class Members.

81. The experiences of Plaintiff, with respect to his pay, are typical of the experiences

of the FLSA Class Members.

82. The specific job titles or precise job responsibilities of each FLSA Class Member do not prevent collective treatment.

83. All FLSA Class Members, irrespective of their particular job requirements, are entitled to overtime compensation for hours worked in excess of forty during a workweek.

84. Although the exact amount of damages may vary among FLSA Class Members, the damages for the FLSA Class Members can be easily calculated by a simple formula. The claims of all FLSA Class Members arise from a common nucleus of facts. Liability is based on a systematic course of wrongful conduct by Defendants that caused harm to all FLSA Class Members.

85. As such, Plaintiff brings his FLSA overtime as a collective action on behalf of the following class, and Plaintiff's Counsel seek to send notice of this lawsuit to the following described persons (referred to herein as "FLSA Class Members"):

> All persons who worked for Defendants as telephone dedicated employees, however titled, who were compensated, in part or in full, on an hourly basis at QBE call centers in the United States at any time between June 13, 2013 and the present who did not receive the full amount of overtime wages earned and owed to them.

86. There are questions of law or fact common to the employees described in paragraph 85.

87. Plaintiff is similarly situated to the employees described in paragraph 85, as Plaintiff's claims are typical of the claims of those persons.

88. Plaintiff's claims or defenses are typical of the claims or defenses of the persons described in paragraph 85.

89. This is not a collusive or friendly action. Plaintiff has retained counsel experienced

in complex employment litigation, and Plaintiff and his counsel will fairly and adequately protect the interests of the persons described in paragraph 85.

90. A collective action is the most appropriate method for the fair and efficient resolution of the matters alleged in Count I.

91. At all relevant times, Defendants employed Plaintiff and the persons described in paragraph 85.

92. At all relevant times, Defendants paid Plaintiff and the persons described in paragraph 85 to work.

93. At all relevant times, each Defendant has been an "employer" of Plaintiff and the persons described in paragraph 85, as the term "employer" is defined by Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

94. At all relevant times, Plaintiff and the persons described in paragraph 85 have been "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

## COUNT I – FLSA
### (Failure to Pay Overtime Wages)

95. Plaintiff re-alleges and incorporates by reference paragraphs 1 through 94 as paragraph 95 of this Count I.

96. Plaintiff, individually and on behalf and the members of the class described in paragraph 85, asserts claims for unpaid overtime pursuant to the FLSA.

97. At any and all times relevant hereto, each Defendant was an "enterprise engaged in commerce" within the meaning of Section 3(s) of the FLSA, 29 U.S.C. § 203(s).

98. At any and all times relevant hereto, each Defendant was an "employer" of the

Plaintiff and at least certain of the members of the class described in paragraph 85 within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

99. At any and all times relevant hereto, Plaintiff and the members of the class described in paragraph 85 were "employees" of Defendants as defined by Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

100. Plaintiff and the members of the class described in paragraph 85 were not paid for all time worked in excess of 40 hours in a week during the applicable statutory time period, in violation of the maximum hours provisions of the FLSA, 29 U.S.C. § 207.

101. At all times relevant hereto, Defendants' failure to pay Plaintiff and the members of the class described in paragraph 85 premium pay for all time worked over 40 hours in a week was willful in that, among other things:

    a. Defendants knew that the FLSA required them to pay time and one-half for all time worked over 40 hours in a week;

    b. Defendants failed to maintain true and accurate time records; and

    c. Defendants encouraged Plaintiff and other similarly situated employees to not record all time worked.

102. As a direct and proximate result thereof, Plaintiff and the members of the class described in paragraph 85 are due unpaid back wages and liquidated damages, pursuant to 29 U.S.C. § 216.

### DAMAGES SOUGHT

103. Plaintiff and the FLSA Class Members are entitled to recover compensation for the hours they worked for which they were not paid at the federally mandated overtime wage rate.

104. Plaintiff and the FLSA Class Members are also entitled to an amount equal to all of their unpaid wages as liquidated damages. 29 U.S.C. § 216(b).

105. Plaintiff and FLSA Class Members are entitled to recover their attorneys' fees and costs as required by the FLSA. 29 U.S.C. § 216(b).

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, by and through his attorneys, demands judgment against Defendants and in favor of Plaintiff and all others similarly situated, for a sum that will properly, adequately and completely compensate them for the nature, extent and duration of their damages, the costs of this action and as follows:

A. Conditionally certify the class described in paragraph 85, and grant Plaintiff's counsel leave to send notice of this lawsuit to the members of the class and allow them the opportunity to opt-in as party plaintiffs pursuant to Section 16 of the FLSA, 29 U.S.C. § 216;

B. Declare and find that the Defendants committed one or more of the following acts:

  i. Violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs; and

  ii. Willfully violated provisions of the FLSA for Plaintiff and all persons who opt-in as party plaintiffs.

C. Award compensatory damages, including all wages and overtime pay owed, in an amount according to proof;

D. Award liquidated damages on all wages and overtime compensation due to Plaintiff and all persons who opt-in as party plaintiffs;

E. Award all costs and reasonable attorneys' fees incurred prosecuting this claim;

F. Grant leave to amend to add claims under applicable state and federal laws to conform with the proofs at trial;

G. Grant leave to add additional plaintiffs by motion or any other method approved by the Court to conform with the proofs at trial; and

H. Grant such further relief as the Court deems just and equitable.

DATED this 29th day of March 2017

                        **LAW OFFICE OF JAMES X. BORMES, P.C.**

                        s/ James X. Bormes
                        (*pro hac vice* admission pending)
                        James X. Bormes
                        LAW OFFICE OF JAMES X. BORMES, P.C.
                        Illinois State Bar No. 620268
                        8 South Michigan Avenue
                        Suite 2600
                        Chicago, Illinois  60603
                        (312) 201-0575
                        jxbormes@bormeslaw.com


                        Thomas M. Ryan
                        (*pro hac vice* admission pending)
                        LAW OFFICE OF THOMAS M. RYAN, P.C.
                        Illinois State Bar No. 6273422
                        35 East Wacker Drive
                        Suite 650
                        Chicago, Illinois  60601
                        (312) 726-3400
                        tom@tomryanlaw.com


                        LOCAL COUNSEL:
                        Michelle R. Matheson #019568
                        MATHESON & MATHESON, P.L.C.
                        15300 North 90th Street
                        Suite 550
                        Scottsdale, Arizona 85260
                        (480) 889-8951
                        mmatheson@mathesonlegal.com
                        Attorney for Plaintiff

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that on March 29, 2017, she filed the attached Amended Collective Action Complaint via the CM/ECF system which will send notice of such filing to all counsel of record.

/s/ Catherine P. Sons
Attorney for Plaintiff