# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

DAVID COLON, individually and
on behalf of all others similarly situated,

      Plaintiff,

      v.

QBE AMERICAS, INC. and
AEROTEK, INC.,

      Defendants.

No.: 2:16-cv-01900-ROS

## SETTLEMENT AGREEMENT AND RELEASE

This Settlement Agreement and Release ("Settlement Agreement") was made and entered into between Plaintiff David Colon ("Plaintiff"), on behalf of himself and the Collective (as defined below), on the one hand, and Defendants QBE Americas, Inc. ("QBE") and Aerotek, Inc. ("Aerotek") (collectively, "Defendants"), on the other hand, (collectively, the "Parties"), in the above-captioned Action.

1.   DEFINITIONS

The following terms, when used in this Settlement Agreement, have the meanings set forth below, except when they are otherwise or more precisely defined in another Section.

(a)    "Action" means the civil action filed in the United States District Court, District of Arizona, titled Colon v. QBE Americas, Inc. et al., No. 2:16-cv-1900.

(b)    "Collective" means all telephone-dedicated employees employed by QBE or QBE's contingent worker vendors, who worked in QBE's call centers, service centers and the like on a nationwide basis, from July 6, 2014 to the date of approval by the Court ("the Relevant Time Period").  All such persons may be referred to herein as "Collective Action Members".

Prior to the mailing of the Collection Action Settlement Notice ("Notice" as defined in Section 7(b), the Parties will agree upon a final list of Collective Action Members.

(c)     "Claimants" means all members of the Collective who submit valid and timely Claim Forms to participate in the Settlement.

(d)     "Collective Action Counsel" means James X. Bormes and Catherine P. Sons of the Law Office of James X. Bormes, P.C., Thomas M. Ryan of the Law Office of Thomas M. Ryan, P.C.; and Michelle Matheson of Matheson & Matheson, P.L.C.

(e)     "Court" means the United States District Court, District of Arizona.

(f)     "Settling Parties" means the Claimants and Defendants.

(g)     "Settlement Administrator" means Dahl Administration LLC.

2.    BACKGROUND

On June 13, 2016, Plaintiff filed an Action against Defendants, on behalf of himself and similarly situated individuals, in the form of a putative Collective Action Complaint asserting violations of the Fair Labor Standards Act ("FLSA").   Plaintiff's Complaint alleged that Defendants have a so-called "rounding" policy and practice that required or permitted him and other similarly situated telephone-dedicated employees to perform unpaid work before and after the start and end times of their shifts.   On March 29, 2017, Plaintiff filed his First Amended Complaint which added similar allegations relating to QBE's call centers outside of Arizona, named the correct QBE defendant entity, and included additional allegations relating to QBE's rounding policy and practice.   (Doc. No. 53).   On April 12, 2017, Defendants filed a joint motion to dismiss or, alternatively, to strike the collective action allegations in Plaintiff's First Amended Complaint.   (Doc. No. 57).   Defendants deny liability or wrongdoing of any kind associated with the claims in the Action, deny that the Action will be certified as a class and/or collection action, and specifically deny that they require or permit their hourly employees to work off the clock.

Over the past year, the Parties have actively engaged in discovery, including conducting the depositions of Plaintiff and four managers and corporate witnesses of Defendants. The Parties also have propounded and responded to written discovery, and produced a voluminous number of documents. Even today, the Parties disagree on many procedural and substantive issues. Plaintiff believes that collective treatment of his claims is appropriate, that the Court would conditionally certify the Action under the FLSA pursuant to Plaintiff's pending motion (Doc. Nos. 61 and 62), and that he and the Collective would prevail on their claims if this litigation proceeded. Defendants believe they would prevail on their pending motion to dismiss (Doc. No. 57), and that they would defeat FLSA certification on several grounds, including but not limited to: Plaintiff and the individuals he purports to represent are not similarly situated; there is no policy or practice that requires, encourages, or permits employees to perform off-the-clock work; and individualized issues of proof would ultimately predominate this Action.

In June 2017, the Parties agreed that it would be in the best interest of all Parties to attempt to resolve this matter through private mediation and without further litigation. Accordingly, the Parties filed a joint motion to stay all proceedings and toll the statute of limitations, which this Court granted. (Doc. No. 77).

The Parties participated in a voluntary mediation of Plaintiff's claims before an experienced private mediator, Hunter R. Hughes. At the conclusion of a full day of arm's-length, comprehensive settlement negotiations, the Parties were close to reaching an agreement on the terms and conditions of a settlement. Thereafter, the Parties continued to engage in settlement discussions, and ultimately reached a resolution regarding the parameters of a settlement of this Action.

For settlement purposes only, and with no admission of liability and without prejudice to any and all substantive and/or procedural defenses Defendants could assert to the allegations in

the Complaint, the Parties will stipulate to the Court that the Collective may be certified as an FLSA opt-in collective action.

3.     REASONS FOR SETTLEMENT

(a)     Defendants deny liability or wrongdoing of any kind associated with Plaintiff's claims and further deny that this Action is appropriate for collective treatment for any purpose other than settlement.  Plaintiff believes he has meritorious claims and that a collective action is appropriate.  Although the Parties do not abandon the positions they took in this Action, they believe that continued litigation would be protracted, expensive, uncertain, and contrary to their best interests.  In light of these realities, the Parties believe that this Settlement Agreement is the best way to resolve the disputes between and among them.

(b)     Collective Action Counsel have diligently and thoroughly investigated the facts of this Action and researched the legal issues involved, including an extensive review of relevant documents and data.  Based on their own independent investigation and evaluation, Collective Action Counsel believe that settlement for the consideration and other terms set forth in this Settlement Agreement is fair, reasonable, and adequate, and in the best interests of Plaintiff and the Collective.  While Collective Action Counsel believe the claims asserted in the Action have merit, they recognize and acknowledge that fully prosecuting this action would cost a substantial sum of additional money, take a long time, and impose substantial burdens on the Collective. Collective Action Counsel also has taken into account the uncertainty and risks inherent in any litigation, especially in complex cases like this Action.

(c)     The Parties agree that this Settlement Agreement is fair, reasonable and adequate, and represent the same to the Court.

4.      STATEMENT OF NO ADMISSION

(a)     This Settlement Agreement does not constitute and is not to be deemed, construed, or used as an admission by Defendants as to the truth of the factual allegations or the merits of the claims made against them in this Action.

(b)     This Settlement Agreement does not constitute and is not to be deemed, construed, or used as an admission of liability or wrongdoing on the part of Defendants with respect to this Action.

(c)     This Settlement Agreement is a confidential settlement document and may not be admitted into evidence or used in any proceeding, except an action, motion, or proceeding to approve, interpret, or enforce the terms of the Settlement Agreement.

(d)     This Settlement Agreement does not constitute an admission by Aerotek that it would be unable to enforce any arbitration agreements into which it has entered with any of the Collective Action Members.  Aerotek enters into this settlement without prejudice to its ability to enforce any arbitration agreement into which it has entered with any current or former employee.

5.      MONETARY TERMS OF SETTLEMENT

(a)     The claims of all Collective Action Members are settled for a maximum of no more than One Million Two Hundred Ninety Thousand Dollars ($1,290,000.00) (the "Gross Settlement Amount").   This amount includes settlement payments to eligible Claimants; attorneys' fees, costs and expenses related to the Action; all fees and costs of settlement administration; the employer's share of payroll taxes; and an individual incentive payment to Plaintiff Colon.

(1)     QBE shall contribute up to $1,200,000 to the Gross Settlement Amount from which payment to Claimants whom are not current or former Aerotek

employees, shall be made, as well as other expenses stated in this Settlement Agreement on a *pro rata* basis.

(2)     Aerotek shall contribute up to $90,000 toward the Gross Settlement Amount from which payment to Aerotek's current and former employees who are Claimants shall be made, as well as other expenses stated in the Settlement Agreement on a *pro rata* basis.

(b)     The Gross Settlement Amount includes an award of attorneys' fees of one third (1/3) of the Gross Settlement Amount, in the amount of Four Hundred Thirty Thousand Dollars ($430,000.00) to Collective Action Counsel, subject to Court approval.   The Settlement Administrator will issue Collective Action Counsel IRS Forms 1099 for their award of attorneys' fees.  Collective Action Counsel shall also be reimbursed for out of pocket agreed and approved costs and expenses, in an amount not to exceed Twenty-Five Thousand Dollars ($25,000.00). The Parties agree that such attorneys' fees, costs and expenses are reasonable and necessary, and Defendants and their counsel will not unreasonably object to these amounts.

(c)     The Gross Settlement Amount includes an incentive payment to Plaintiff Colon of Eight Thousand, Five Hundred Dollars ($8,500.00), for assisting and aiding Collective Action Counsel throughout the Action.  Such incentive payment will be reported on an IRS 1099 Form.

(d)     The Gross Settlement Amount includes all costs of settlement administration, including the fees of the Settlement Administrator.

(e)     The Gross Settlement Amount includes the employer's share of payroll taxes.

6.     <u>SETTLEMENT ALLOCATIONS AND DISTRIBUTION</u>

(a)     **Preliminary Allocation:**  The "Net Settlement Fund" available for payments to eligible Collective Action Members was calculated by deducting the following amounts from the Gross Settlement Amount: (1) an award for attorneys' fees and costs to Collective Action

Counsel in the total amount of $455,000.00; (2) an incentive award to Plaintiff Colon in the amount of $8,500.00; and (3) costs of settlement administration.

(b)     Each Collective Action Member's estimated maximum share of the settlement fund has been or will be calculated by the Settlement Administrator based on the number of weeks the Collective Action Member worked for the respective Defendants in a telephone-dedicated position during the Relevant Time Period and utilizing an agreed average hourly rate of the Collective Action Members who worked in telephone-dedicated positions during the Relevant Time Period, such average hourly rate being $ 14.00.

1.     Each Collective Action Member will receive a gross amount of $ 26.25 for each such full week worked for or at QBE during the Relevant Time Period, representing the unpaid overtime compensation that was allegedly not previously paid to such Collective Action Members.  Such unpaid overtime compensation is based on the best data reasonably available to the Parties as of the Notice Date (as defined below) utilizing an agreed average hourly pay rate for the telephone-dedicated position during the Relevant Time Period.

(c)     The individual Settlement Payments to eligible Claimants will be subject to any required legal deductions as described further in Section 8 below, and also shall be less any employer-side payroll taxes.  No benefit shall increase or accrue as a result of any payment made as a result of this Settlement Agreement.

(d)     **Final Allocation:**  Within seven (7) days of the deadline to return a Claim Form, the Settlement Administrator shall provide Defendants and Collective Action Counsel with a copy of all submitted claim forms as well as a list of the names and addresses of those individuals who filed valid and timely claims forms, and the final allocations of amounts to be distributed to each of the Claimants.  Once the final allocations have been calculated, payments to each Claimant will be in accordance with those allocations.

7.    <u>CLAIMS PROCESS</u>

(a)      Within sixty-seven (67) days of the Court's approval of this Settlement Agreement and agreement of all Parties on the List of Collection Action Members to receive Notice of Settlement (the "Notice Date"), the Settlement Administrator shall send each Collective Action Member the following documents via U.S. mail: 1) a Collective Action Settlement Notice ("Notice"), attached hereto as Exhibit A; and 2) a Claim Form attached hereto as Exhibit B (the Notice and Claim Form shall be referred to collectively herein as a "Notice Packet").

(b)      Defendants agree to provide the Settlement Administrator with each Collective Action Member's last known address within sixty (60 days of the Notice Date.  Defendant Aerotek will be the sole Party responsible for providing last known addresses for Collective Action Members who were employed by Aerotek.  Defendant QBE will be the sole Party responsible for providing last known addresses for Collective Action Members who were employed by QBE or QBE's contingent worker vendors other than Aerotek.  Prior to the mailing, the Settlement Administrator shall run the addresses through the U.S. Postal Service's National Change of Address database and mail the applicable Notice Packet using the most current mailing address information.  Within thirty (30) days of the date of the initial mailing, the Settlement Administrator shall promptly conduct a second mailing for any Collective Action Member whose Notice Packet is returned as undelivered and for whom a forwarding address is provided by the U.S. Postal Service or through skip-tracing.  If after this second mailing the Notice Packet is again returned as undelivered, then the notice mailing process shall end for that Collective Action Member.  Thirty (30) days after each initial mailing of Notice Packets to Collective Action Members, the Settlement Administrator shall mail a reminder postcard to the Collective Action Members that will remind them of the deadline to submit a Claim Form.

(c)    Claim Forms will be submitted to the Settlement Administrator, who will certify jointly to Collective Action Counsel and Defendants' counsel which claims were timely filed.

(d)    The Settlement Administrator will provide the Parties with weekly reports relating to the mailing and processing of Notice Packets and Claim Forms via email.  The weekly reports shall contain a list of the names and addresses of all Collective Action Members who have submitted valid and timely Claim Forms during that reporting period.  Within seven (7) days after receipt of each list of Claimants, Defendants shall provide the Settlement Administrator with the number of workweeks each Claimant worked for or at QBE during the Relevant Time Period.  Defendant Aerotek will be the sole Party responsible for providing the number of workweeks for Claimants who were employed by Aerotek.  Defendant QBE will be the sole Party responsible for providing the number of workweeks for Claimants who were employed by QBE or QBE's contingent worker vendors other than Aerotek.

(e)    Members of the Collective will have sixty (60) days from the postmarked mailing of the Notice Packet to sign and return (i.e., postmark and mail) their Claim Forms to the Settlement Administrator ("Claim Deadline").  Each Claim Form must be signed by the Collective Action Member.  Plaintiff Colon is not required to submit a Claim Form to receive his estimated Settlement Payment.

(f)    Using this claims process, Defendants, through and by way of the Settlement Administrator, will make payments of a specified sum (calculated according to the method set forth in Section 6 above) on each timely and valid Claim Form submitted.  The Settlement Administrator will be responsible for the issuance of all checks and W-2 Forms.

(g)    Within seven (7) days of the Claim Deadline, the Settlement Administrator shall provide Defendants and Collective Action Counsel with a copy of all submitted Claim Forms as

well as a list of the names and addresses of those individuals who filed valid and timely Claim Forms, and the final settlement payment amount to be distributed to each of the Claimants.

(h)     Within thirty-seven (37) days of the Claim Deadline, QBE shall tender to the Settlement Administrator the total amount to satisfy the settlement payments to all Claimants who were employed by QBE or QBE's contingent worker vendors other than Aerotek.   Within thirty-seven (37) days of the Claim Deadline, Aerotek shall tender to the Settlement Administrator the total amount to satisfy the settlement payments to all Claimants who were employed by Aerotek.

(i)     Within forty-four (44) days of the Claim Deadline, the Settlement Administrator shall mail the settlement checks to the Claimants.   Defendants will pay, separate and apart from the sum specified in subparagraph 7(f), the employer's share of all applicable taxes on any settlement check as calculated in paragraph 8 below.

(j)     It is expressly understood that Defendants are obligated only to pay claims which are timely and properly submitted to the Settlement Administrator.   If fewer than all Collective Action Members submit Claim Forms, the total amount paid by Defendants will be less than the total Gross Settlement Amount.   Each Defendant shall have no obligation to make payments for Collective Action Members it employs or employed who do not become Claimants.

(i)     Within 21 days of the Notice Date, QBE and Aerotek (on a pro-rata basis) shall tender the approved amount of attorneys' fees and costs, and the approved amount of the Incentive Award, to the Settlement Administrator.   The Settlement Administrator shall wire the attorneys' fees and costs to Collective Action Counsel and mail the Incentive Award to Plaintiff Colon within three days of receipt.

8.    TAXATION

The Settlement Administrator shall report the total amount of the payments to the respective Claimants and to the appropriate taxing authorities on an IRS Form W-2.  The settlement payment shall be subject to applicable employment taxes and withholding taxes, as determined by the Settlement Administrator.

The Parties acknowledge and agree that the Settlement Administrator shall have the sole authority to determine the payout amounts, to distribute the payouts, and to have all tax reporting and payment duties and obligations.  Further the Settlement Administrator will be responsible for calculating the amount of withholdings, and shall be responsible for the calculation and payment of the employer's share of payroll taxes resulting from the payments to Claimants.  For these purposes, the Settlement Administrator shall be considered the Section 3401 (d)(1) statutory employer for all tax purposes.

9.    RELEASE OF CLAIMS

The Claimants and their respective agents, employees, successors, heirs, spouses, administrators, executors, partners, assigns, and all of their past, present and future representatives and predecessors, fully and finally release and discharge Defendants and their past, present, and future parent and subsidiary corporations, divisions, affiliates, partners, joint venturers, stockholders, predecessors, successors, insurers, insurance adjusters, assigns, customers, suppliers, subcontractors, sales representatives, brokers, officers, directors, employees, agents, representatives, and any other person, firm, or corporation with whom any of them is now or may hereafter be affiliated ("Released Parties") from any and all wage and hour claims, rights, demands, liabilities, suits, penalties, guarantees, debts, contracts, agreements, obligations, expenses, costs, attorneys' fees, and causes of action of every nature and description, whether known or unknown, arising during the Relevant Time Period that were asserted or could

have been asserted in the Action relating to work performed for Defendant QBE and/or Aerotek or other QBE contingent work vendors/contractors (including all claims based on joint employment by QBE), including claims that could have been asserted under federal, state and local statutory, constitutional, contractual or common wage and hour laws, including but not limited to wage and hour claims under the Fair Labor Standards Act ("FLSA"). This release includes any claims that are derivative of the claims being released here including, but not limited to, claims for willful violations, liquidated damages, punitive damages, interest, attorneys' fees, costs, or other equitable relief related to the alleged payment or non-payment of overtime wages.

Plaintiff Colon and each Claimant expressly represent that they believe the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.

Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in this Settlement Agreement, the Claimants do not release or waive any claims that may not be released or waived unless otherwise allowed by state and/or federal law.

10.    <u>PLAINTIFF COLON'S RELEASE OF CLAIMS</u>

Named Plaintiff Colon fully and finally releases and discharges any and all claims, known and unknown, asserted or unasserted, which he has or may have against the Released Parties, including, but not limited to, all claims released as described in Paragraph 9, and any alleged violation of: Title VII of the Civil Rights Act of 1964; Sections 1981 through 1988 of Title 42 of the United States Code; the Employee Retirement Income Security Act of 1974 ("ERISA") (except for any vested benefits under any tax qualified benefit plan); the Immigration Reform and Control Act; the Americans with Disabilities Act of 1990; the Fair Credit Reporting Act; the Family and Medical Leave Act; the Equal Pay Act; the Fair Labor Standards Act; any other federal, state or local law, rule, regulation, or ordinance; any public policy, contract, tort, or

common law; and any basis for recovering costs, fees, or other expenses including attorneys' fees incurred in these matters. Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in this Settlement Agreement, Plaintiff Colon does not release any claim that cannot be released by private contractor for breach of the terms of the Settlement Agreement between him and Defendants.

11.   DISMISSAL

The Parties agree to cooperate and take all steps necessary and appropriate to obtain approval of the Settlement and dismiss the Action with prejudice. The Parties agree that, upon Court approval of this Settlement Agreement, the Action will be dismissed with prejudice.

12.   UNCASHED CHECKS

Claimants will have one hundred twenty (120) days to negotiate (deposit or cash) settlement checks. The Settlement Administrator shall cause any settlement checks that have not been negotiated within the 120-day negotiation period to be canceled and cause those funds to escheat to an appropriate state agency or fund, as determined by the Settlement Administrator. Settlement checks will bear language indicating that they will be void after 120 days. An uncashed check will not constitute a rescission of the Claimant's Released Claims, set forth in Section 9 above.

13.   CONSTRUCTION

The terms and conditions of this Settlement Agreement are the result of lengthy, intensive, arm's-length negotiations between and among the Parties. Accordingly, this Settlement Agreement is not to be construed in favor of or against any party by reason of the extent to which any party or its counsel participated in the drafting of the Settlement Agreement.

14.    INTEGRATION

This Settlement Agreement contains the entire agreement between the Parties relating to the settlement and transactions contemplated hereby, and all prior or contemporaneous agreements, understandings, representations, and statements, whether oral or written and whether by a party or such party's legal counsel, are merged herein.  No rights hereunder may be waived except in writing.

15.    PUBLIC COMMENT

Counsel will not disclose, publicize or disseminate the terms of the settlements beyond what is required to obtain Court approval and the specific requirements to effectuate the terms of the settlement.  In other words, there will be no advertisements or postings on the internet relating to this settlement.  If any party or attorney is contacted by a member of the press, they will limit their comments to "the parties were able to reach a mutually acceptable resolution of this matter."  Collective Action Counsel may respond to any questions initiated by Collective Action Members.

16.    BINDING ON SUCCESSORS AND ASSIGNS

This Settlement Agreement shall be binding upon and inure to the benefit of the Settling Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

17.    AUTHORITY TO ENTER SETTLEMENT AGREEMENT

The signatories hereto represent that they are fully authorized to enter into this Settlement Agreement and bind the respective Settling Parties to its terms and conditions.

18.    DISPUTES

Any disputes arising out of or relating to this Settlement Agreement will be submitted to Hunter Hughes for mediation before being submitted to the Court.  The United States District Court for the District of Arizona shall have continuing jurisdiction to construe, interpret and

enforce the provisions of this Settlement Agreement, and to hear and adjudicate any dispute or litigation arising from this Settlement Agreement or the issues of law and facts asserted in or related to the Action.

Dated: _____, 2018            DAVID COLON


                                            _____

                                            David Colon



Dated: _____, 2018            LAW OFFICE OF JAMES X. BORMES, P.C.


                                            By: _____

                                                James X. Bormes, Plaintiff's Attorney



Dated: _____, 2018            QBE AMERICAS, INC.


                                            By: _____

                                                [Name, Title]



Dated: _____, 2018            AEROTEK, INC.


                                            By: _____

                                                [Name, Title]


4840-1208-4568, v. 1

# EXHIBIT A

<u>**COLLECTIVE ACTION SETTLEMENT NOTICE**</u>

in

*Colon v. QBE Americas, Inc. and Aerotek, Inc.*

<u>United States District Court for the District of Arizona</u>
<u>(Case No. 16-cv-01900-ROS)</u>

**<u>ATTENTION</u>:   YOU ARE HEREBY ADVISED OF A SETTLEMENT THAT WAS REACHED IN THE ABOVE-REFERENCED COLLECTIVE ACTION LAWSUIT**.

UNDER THE SETTLEMENT, YOU ARE ELIGIBLE TO RECEIVE $26.25 FOR EACH WORKWEEK IN WHICH YOU MAY HAVE WORKED FOR DEFENDANTS DURING THE RELEVANT TIME PERIOD OF JULY 6, 2014 TO [APPROVAL DATE].

**PLEASE READ THIS ENTIRE NOTICE CAREFULLY.   IT SUMMARIZES THE SETTLEMENT AND EXPLAINS THE STEPS YOU MUST TAKE TO PARTICIPATE IN THE SETTLEMENT AND COLLECT THE ABOVE PAYMENT.**

**(1)      THE PURPOSE OF THIS NOTICE**.   The purpose of this notice is to inform you that a settlement has been reached in the above-referenced lawsuit that was filed against QBE Americas, Inc. and Aerotek, Inc. (collectively, "Defendants") by Plaintiff David Colon, a former hourly employee of Defendants, on his own behalf and on behalf of other similarly situated telephone-dedicated hourly employees.   Defendants have denied all wrongdoing, but the parties have negotiated a settlement to resolve the matter.   Relevant information regarding the lawsuit, the basic terms of the settlement, and how you can participate in the settlement, is set forth below.

**(2)      WHAT IS THIS LAWSUIT ABOUT?**   Plaintiff worked as an hourly employee at a QBE call center in Arizona.   Defendant Aerotek placed him to work at the call center.   He filed a lawsuit claiming Defendants violated the Fair Labor Standards Act ("FLSA").   Plaintiff claimed, among other things, that Defendants violated the law by failing to pay their employees for the time they spent performing work-related tasks prior to and after the beginning and end of their shifts, while the employees were off-the-clock.   These tasks include, for example, logging into and booting up computers, opening software programs necessary to handle calls and perform work, and reading work emails before the start of the scheduled shift time, or handling calls or closing out your work station after the end of your scheduled shift time.

Defendants deny any liability or wrongdoing of any kind associated with the claims alleged by the Plaintiff in the lawsuit, and specifically, Defendants assert that their pay practices complied with the FLSA and all other federal and state laws.

The Court has not made any ruling on the merits of the Plaintiff's claims, and no party has prevailed in this action.

**(3)      THE SETTLEMENT AGREEMENT AND METHOD FOR CALCULATING SETTLEMENT PAYMENTS.**   The parties reached a settlement of this matter on October 31, 2017 that has been approved by the Court.   You are receiving this notice because you are eligible

to participate in the settlement.  Individual settlement amounts are based upon the number of workweeks you worked for Defendants as a telephone-dedicated employee during the Relevant Time Period of July 6, 2014 to [Approval Date].

**(4)     BASED UPON MY WORK HISTORY WITH DEFENDANTS, WHAT AMOUNT MAY I BE ELIGIBLE TO RECEIVE UNDER THIS SETTLEMENT?**  Your settlement payment is based on the number of workweeks in which you may have worked at a QBE call center in a telephone-dedicated position during the Relevant Time Period.  You will be paid $26.25 for each such workweek, less applicable taxes, including payroll withholding taxes.

One Hundred percent (100%) of your settlement payment will constitute wage income, and will be subject to ordinary payroll and income taxes and withholding.  These taxes and withholdings will be deducted from the settlement checks, which are treated as wages and, at the end of the tax year, will be reported on IRS Forms W-2.  Neither Collective Action Counsel nor Defendants or their counsel make any representations concerning the tax consequences of this Settlement or your participation in it, and you are advised to seek your own personal tax advice prior to acting in response to this Notice.

To participate in the Settlement, please carefully review this Notice, sign and return the enclosed Claim Form to the Settlement Administrator by [60 days], and a settlement payment will be mailed to you on approximately [date].  Although Defendants deny the Plaintiff's allegations, Defendants are encouraging you to accept your share of the Settlement.  Defendants will not take any action against employees because they participate in the Settlement.

**(5)     WHAT ARE MY OPTIONS?**  As a Collective Action Member, you have the following two (2) options:

(a)     **Submit a Claim.**  If you wish to participate in and receive money from the settlement, you must submit a Claim Form to the Settlement Administrator at the following address:

Dahl Administration LLC
[Settlement Administrator info]

A copy of the required Claim Form is included with this Notice.  Your Claim Form **must be postmarked by and mailed to** the Settlement Administrator no later than **[60 days]** in order to be considered timely and valid.  If you do not mail your Claim Form by [**60 days**], then your Claim Form will not be valid or timely and, therefore, you will not be able to participate in the settlement or receive a settlement payment.

If you submit a Claim Form, you will be agreeing to the waiver and release of claims included in the Settlement Agreement and contained on the Claim Form in exchange for a settlement payment.

(b)     **Do Nothing**.  If you do **not** wish to participate in the Settlement, receive money from the Settlement, or be bound by its terms, you do not need to take any further action.

**(6)    WAIVER AND RELEASE OF CLAIMS.**  If you elect to participate in the Settlement, you will fully and finally release and discharge Defendants and their past, present, and future parent and subsidiary corporations, divisions, affiliates, partners, joint venturers, stockholders, predecessors, successors, insurers, insurance adjusters, assigns, customers, suppliers, subcontractors, sales representatives, brokers, officers, directors, employees, agents, representatives, and any other person, firm, or corporation with whom any of them is now or may hereafter be affiliated ("Released Parties") from any and all wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, that were asserted or could have been asserted in the Action relating to work performed for Defendant QBE, including claims that could have been asserted under federal, state and local statutory, constitutional, contractual or common wage and hour laws, including but not limited to wage and hour claims under the Fair Labor Standards Act ("FLSA").

Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in the Settlement Agreement, you will not release or waive any claims that may not be released or waived unless otherwise allowed by state and/or federal law.

**(7)    WHO SHOULD I CONTACT IF I HAVE QUESTIONS ABOUT MY SETTLEMENT PAYMENT?**  The Settlement Administrator, who is identified above, is available to answer any questions you may have about the Settlement Payment.

**(8)    IF I HAVE QUESTIONS ABOUT MY LEGAL RIGHTS IN THIS CASE, DO I HAVE A LAWYER TO CONTACT?**  The Court has designated the following lawyers to serve as "Collective Action Counsel" and to represent the interests of the Plaintiff and the Collective Action Members:

James X. Bormes                              Thomas M. Ryan
Catherine P. Sons                            Law Offices of Thomas M. Ryan, P.C.
Law Office of James X. Bormes, P.C.          35 E. Wacker Drive
8 S. Michigan Ave                            Suite 650
Suite 2600                                   Chicago, IL 60601
Chicago, IL 6060                             (312) 726-3400
(312) 201-0575                               tom@tomryanlaw.com
jxbormes@bormeslaw.com
cpsons@bormeslaw.com

Michelle R. Matheson
Matheson & Matheson, P.L.C.
15300 North 90th Street
Suite 550
Scottsdale, AZ 85260
(480) 889-8951
mmatheson@mathesonlegal.com

The above lawyers represent your legal interests and will answer your questions in strict confidence.  Please feel free to contact them with any questions or issues about your legal rights.

3

**(9)     HOW WILL THE LAWYERS GET PAID?**  The lawyers identified above have worked on this lawsuit without receiving any payment for their time or out-of-pocket expenses.  Under the settlement, the Court has approved the lawyers' request for attorneys' fees and out-of-pocket expenses totaling [$455,000.00].  You will not pay any lawyer's fees or expenses out of your individual share of the settlement proceeds.

**(10)     WHAT WILL THE NAMED PLAINTIFF RECEIVE?**  The Court has approved the Plaintiff's (*i.e.*, David Colon's) request for a service payment of $8,500.00.  This payment is requested due to the efforts of the Plaintiff in filing this lawsuit, participating in the litigation and mediation process, and assisting in achieving this settlement.

**(11)     EXAMINATION OF COURT FILE.**  All of the above descriptions of this lawsuit, the Settlement, and other matters are only summaries.  All documents filed in this lawsuit, including the full Settlement Agreement that details the terms of the settlement, may be inspected at the office of the United States District Court, District of Arizona, 401 W. Washington St., Phoenix, Arizona, or by contacting Collective Action Counsel.

**PLEASE DO NOT ADDRESS ANY QUESTIONS ABOUT THE SETTLEMENT OR LAWSUIT TO DEFENDANTS, THE CLERK OF THE COURT, OR TO THE JUDGE.**

# EXHIBIT B

# CLAIM FORM

*Colon v. QBE Americas, Inc. and Aerotek, Inc.*

United States District Court for the District of Arizona
(Case No. 16-cv-01900-ROS)

## Instructions

Please carefully read the **Collective Action Settlement Notice** ("Notice"), which is included with this **Claim Form**.  If you wish to participate in the Settlement, you **must** take all of the following steps:

- Complete all sections of this Claim Form.
- Sign and date this Claim Form below, attesting that the statements and information you have provided are true and correct to the best of your knowledge.
- Provide, to the Settlement Administrator, any additional information requested by the Settlement Administrator required for payment.
- Submit this Claim Form to the Settlement Administrator at the following address:

Dahl Administration LLC
[contact info]

**IMPORTANT:  YOUR CLAIM FORM *MUST BE POSTMARKED BY AND MAILED TO* THE SETTLEMENT ADMINISTRATOR BY [60 days] IN ORDER TO BE TIMELY AND VALID.   YOUR FAILURE TO SUBMIT A TIMELY CLAIM FORM WILL RESULT IN YOU FORFEITING ANY PAYMENT FOR WHICH YOU MAY BE ELIGIBLE UNDER THE SETTLEMENT.**

**CHANGE OF ADDRESS:**  If you change your address, please inform the Settlement Administrator of your new address to ensure correct processing of your claim and delivery of your settlement payment.  It is your responsibility to keep a current address on file with the Settlement Administrator.

---

By signing and submitting this Claim Form, you acknowledge the following: I have received and reviewed the Collective Action Notice and understand its terms and statements.  I submit this Claim Form under the terms of the Notice and the Settlement Agreement described in the Notice.

I hereby agree to participate in the settlement entered in the litigation and approved by the Court.  I also consent and agree to be bound by any adjudication of this action by the Court.  I hereby designate James X. Bormes and Catherine P. Sons of the Law Office of James X. Bormes, P.C., Thomas M. Ryan of the Law Office of Thomas M. Ryan, P.C., and Michelle R. Matheson of Matheson & Matheson, P.L.C. to represent me in this action.

By signing, dating, and returning this Claim Form, you agree to be bound by the Settlement Agreement negotiated by Collective Action Counsel, you consent to become a party

plaintiff to the above referenced lawsuit under the federal Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216(b), you consent to be bound by any judgment in the above referenced lawsuit, and you agree to fully and finally release and discharge Defendants and their past, present, and future parent and subsidiary corporations, divisions, affiliates, partners, joint venturers, stockholders, predecessors, successors, insurers, insurance adjusters, assigns, customers, suppliers, subcontractors, sales representatives, brokers, officers, directors, employees, agents, representatives, and any other person, firm, or corporation with whom any of them is now or may hereafter be affiliated ("Released Parties") from any and all wage and hour claims, rights, demands, liabilities and causes of action of every nature and description, whether known or unknown, that were asserted or could have been asserted in the Action relating to work performed for Defendant QBE, including claims that could have been asserted under federal, state and local statutory, constitutional, contractual or common wage and hour laws, including but not limited to wage and hour claims under the Fair Labor Standards Act ("FLSA").

Notwithstanding the foregoing and notwithstanding any terms or provision to the contrary in the Settlement Agreement, you do not release or waive any claims that may not be released or waived unless otherwise allowed by state and/or federal law

Signature: _____

Your Name: _____
             First                Middle                Last

Your Address: _____
         Street          Apt.      City       State      Zip Code

Your Telephone Number: _____

Your Email Address: _____